UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARLEYSVILLE WORCESTER INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>- *against* -<br><br>WESCO INSURANCE COMPANY; BERNARD THOMAS & PENNY THOMAS d/b/a M&T TRANSPORT, GREAT LAKES CHEESE OF NEW YORK, and AGRI-MARK, INC.<br><br>*Defendants*. | CIVIL ACTION NO.: 16-7304<br><br><br>COMPLAINT |

Plaintiff, Harleysville Worcester Insurance Company ("Harleysville"), by and through its attorneys, Riker, Danzig, Scherer, Hyland & Perretti, LLP, and by way of Complaint against Defendants hereby alleges as follows:

## NATURE OF ACTION

1. Harleysville seeks a declaration, pursuant to 28 U.S.C.A. § 2201(a), that Harleysville has no obligation to defend or indemnify defendants Bernard Thomas and Penny Thomas, d/b/a M&T Transport ("M&T"), in two related underlying actions: i) *Great Lakes Cheese of New York, Inc. v. Agri-Mark, Inc.*, Civil Case No. 7:14-CV-232 (N.D.N.Y.) ("the Federal Court Action") in which M&T is a third-party defendant with respect to third-party claims asserted by Agri-Mark, Inc. ("Agri-Mark"); and ii) *Great Lakes Cheese of New York, Inc. v. Bernard Thomas and Penny Thomas d/b/a M&T Transport*, Index No. 2015-2594, Supreme Court of New York, Jefferson County ("the State Court Action"). The Federal Court Action and the State Court Action are referred to together herein as the "Underlying Actions".

1

2. Harleysville also seeks a declaration that Wesco Insurance Company ("Wesco") must defend and indemnify M&T under the terms of an insurance policy issued by Wesco to M&T.

3. Harleysville also seeks reimbursement from Wesco of all amounts that Harleysville has paid to defend M&T in the Underlying Action.

## THE PARTIES

4. Plaintiff Harleysville is a Pennsylvania corporation with a principal place of business located at 355 Maple Ave. in Harleysville, Pennsylvania.

5. Upon information and belief, Defendant Wesco is a Delaware corporation with its principal place of business located at 59 Maiden Lane, New York, New York.

6. Upon information and belief, defendants Bernard Thomas and Penny Thomas were, at all relevant times, residents and citizens of the State of New York with an address at 439 Main Street, Mannsville, New York.

7. Upon information and belief, Great Lakes Cheese of New York, Inc. ("Great Lakes Cheese") is a New York corporation with its principal place of business located at 23 Phelps Street in Adams, New York.

8. Upon information and belief, Agri-Mark is a Delaware corporation with its principal place of business located at 100 Milk Street in Methuen, Massachusetts.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because all of the defendants are residents of the State of New York and one of the defendants, Wesco, resides in the Southern District of New York.

## THE INSURANCE POLICIES IN DISPUTE

11. Harleysville issued a commercial general liability policy to M&T, bearing policy no. MPA00000091881L, for the policy period from November 1, 2012 through November 1, 2013 (the "Harleysville Policy").

12. Upon information and belief, Wesco issued a commercial business auto policy to M&T, bearing policy no. WPP1050201-01, for the policy period from January 20, 2013 through January 20, 2014 (the "Wesco Policy").

## THE UNDERLYING FEDERAL COURT ACTION

13. Great Lakes Cheese filed the Federal Court Action on March 3, 2014.

14. In the Federal Court Action, Great Lakes Cheese alleges that defendant Agri-Mark entered into a purchase agreement pursuant to which Agri-Mark agreed to sell, and Great Lakes Cheese agreed to purchase, raw milk. (Complaint in the Federal Court Action, Exhibit A hereto, at ¶ 6, Complaint in the State Court Action).

15. Great Lakes Cheese further alleges that, pursuant to that purchase agreement, on August 14, 2013, M&T, as an agent for Agri-Mark, delivered approximately 40,498 pounds of Agri-Mark milk to Great Lakes Cheese (Ex. A. at ¶ 7), and that the milk was then unloaded and pumped into Great Lakes Cheeses' facilities. (Ex. A at ¶ 8).

16. Great Lakes Cheese further alleges that the Agri-Mark milk delivered to Great Lakes Cheese was contaminated with "metal filings, buffing-wheel material, steel, and stainless-steel cutting-wheel material (collectively, 'Metal Contaminant')" (Ex. A at ¶ 8), and that, as a

result, approximately 362,519 pounds of cheese were exposed to contaminated milk. (Ex. A at ¶ 23).

17. In the Federal Court Action, Great Lakes Cheese has asserted claims against Agri-Mark for breach of contract (Count I), breach of express warranties (Count II), breach of implied warranty of merchantability (Count III), and breach of warranty of fitness for a particular purpose (Count IV). Great Lakes Cheese seeks damages from Agri-Mark for "the purchase price paid to Agri-Mark for the contaminated milk; losses from the contamination of cheese and other milk at the [Great Lakes Cheese] Plant; lost profits; time and expense incurred in ceasing production, and inspecting and cleaning Great Lakes Cheese's facilities and equipment; attorneys; fees and costs" in an amount to be determined at trial. (Ex. A at ¶¶ 27, 46.)

18. On April 3, 2014, Agri-Mark filed a Third-Party Complaint in the Federal Court Action against Bernard Thomas and Penny Thomas d/b/a M&T Transport ("M&T"), among others. (Third-Party Complaint, **Exhibit B** hereto.)

19. The Third-Party Complaint alleges that the Agri-Mark milk was free of contamination before it was loaded into M&T's vehicle, and that, if the Agri-Mark milk was contaminated as Great Lakes Cheese claims, then it was contaminated "as a result of the placement of the milk within the [M&T] trailer." (*Id.* ¶ 15.)

20. In the Third-Party Complaint, Agri-Mark asserts claims against M&T for negligence, contribution and/or common-law indemnification (First Cause of Action) and for breach of contract (Fourth Cause of Action).

21. Agri-Mark asserts that, if the allegations against it by Great Lakes Cheese are proved true, then M&T is liable to Agri-Mark for the amount of any judgment that may be rendered against Agri-Mark in the Underlying Action.

22. Harleysville is currently defending M&T in the Federal Court Action subject to a partial disclaimer and reservation of rights.

## THE STATE COURT ACTION

23. Great Lakes Cheese filed the State Court Action against M&T on December 17, 2015, asserting claims related to the contamination at issue in the Federal Court Action.

24. In the State Court Action, Great Lakes Cheese alleges that on or about June 6, 2013, a two-tank milk trailer owned by M&T ("the Trailer") was involved in an accident. (State Court Complaint, Ex. C ¶ 9.)

25. Great Lakes Cheese further alleges that as a result of the accident, repairs were made to the exterior and interior of the Trailer. (*Id.* at ¶ 13.)

26. The State Court Complaint alleges that the interior repairs involved the use of an abrasive cutting wheel, welding tools and grinder so that the stainless-steel surfaces were smoothed to a sanitary grade finish. (*Id.* at ¶14.)

27. The State Court Complaint further alleges that debris from the repairs remained in the trailer after the repairs were completed ("Metal Contaminants"). (*Id.* at ¶ 15.)

28. Following the repairs, M&T washed the Trailer to remove any debris. (*Id.* at ¶¶ 17-20, 26.)

29. The State Court Complaint alleges that in August 2013, M&T picked up milk from Agri-Mark and delivered it to Great Lakes Cheese's plant in Adams, New York, using the Trailer. (*Id.* at ¶ 30.)

30. The State Court Complaint alleges that after the milk was delivered to the Adams plant, Great Lakes Cheese discovered that Great Lakes Cheese's equipment and cheese product had been exposed to the Metal Contaminants and were thereby contaminated. (*Id.* at ¶ 37.)

31. In the State Court Action, Great Lakes Cheese asserts that M&T was negligent in transporting the milk from Agri-Mark to Great Lakes Cheese and breached the standard of care by:

a) failing to conduct or have the New York Department of Agriculture & Markets conduct a thorough inspection of the Trailer following the June 2013 accident and repairs;

b) failing to thoroughly clean the Trailer and ensure the removal of the Metal Contaminants after the June 2013 accident and repairs;

c) using the Trailer with knowledge that neither a proper inspection nor cleaning had been carried out after the June 2013 accident and repairs;

d) misleading Great Lakes Cheese into accepting delivery from a vehicle that M&T knew had not been properly cleaned and sanitized in accordance with state requirements; and

e) picking up, hauling and unloading milk with reckless disregard of the condition of the Trailer. (Ex. B. at ¶ 55.)

32. In the State Court Action, Great Lakes Cheese seeks damages, including: the purchase price paid for the Agri-Mark milk; losses from the contaminated cheese and other milk

at the Adams plaint; lost profits; time and expense in ceasing production and inspecting and cleaning Great Lakes Cheese's facilities and equipment; and attorneys' fees and costs, as well as punitive damages.

33. Harleysville is currently defending M&T in the State Court Action subject to a partial disclaimer and reservation of rights.

## COUNT I
### (Declaratory Judgment as to M&T)

34. Harleysville repeats and realleges the allegations the foregoing paragraphs as if fully set forth herein.

35. The following terms, conditions and exclusions are contained in the Harleysville Policy:

> SECTION I - COVERAGES:
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for 'bodily injury" or "property damage" to which this insurance does not apply….
>
> **2. EXCLUSIONS**
>
> This insurance does not apply to:…
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.
>
> \* \* \*
>
> **g. Aircraft, Auto Or Watercraft**

Case 1:16-cv-07304-AJN   Document 1   Filed 09/19/16   Page 8 of 12

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or 'property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
>
> **j. Damage To Property**
> "Property damage" to:
>
> \* \* \*
>
> (4)    Personal property in the care, custody or control of the insured;
>
> (6)    That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.
>
> **k.    Damage To Your Product**
>
> "Property damage" to "your product" arising out of it or any part of it.

36.    The Underlying Actions allege property damage arising out of the ownership, maintenance, use or entrustment to others of an "auto" and thus exclusion (g) applies to bar coverage.

37.    The Underlying Actions allege damage to personal property in the care, custody or control of M&T, namely damage to milk in the care, custody or control of M&T and thus exclusion (j)(4) applies to preclude coverage.

8

38. The Underlying Actions allege damage to property that must be restored, repaired, or replaced because M&T's work was incorrectly performed on it and thus exclusion (j)(6) applies to bar coverage.

39. The breach of contract claim against M&T in the Federal Court Action is not covered under the Harleysville Policy because this cause of action and/or damages do not meet the definition of "bodily injury," "property damage," "personal injury," advertising injury," or an "occurrence" as required to satisfy the insuring agreement of the Policy.

40. Additionally, coverage for the breach of contract claim against M&T is barred by exclusion (b).

41. For the foregoing reasons, Harleysville has no duty to defend or indemnify M&T for the claims asserted in the Underlying Actions.

42. An actual controversy exists between Harleysville and M&T concerning Harleysville's obligation to defend or indemnify M&T in the Underlying Actions.

43. Harleysville, therefore, respectfully requests that this Court declare the respective rights and obligations of the parties by declaring that Harleysville has no obligation to defend or indemnify M&T in the Underlying Actions.

### COUNT II
### (Declaratory Judgment Against Wesco)

44. Harleysville repeats and realleges the allegations the foregoing allegations as if fully set forth herein.

45. Upon information and belief, the Wesco Policy contains the following coverage provision:

> A. Coverage
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance and use of a covered auto.

46. M&T provided timely notice of the Underlying Actions to Wesco.

47. The claims asserted against M&T in the Underlying Actions allege "property damage" caused by an "accident" which "result[ed] from the ownership, maintenance and use of a covered auto" within the meaning of the Wesco Policy.

48. As such, Wesco is contractually obligated to defend and indemnify M&T for the claims asserted in the Underlying Actions.

49. Upon information and belief, the Wesco Policy does not contain an applicable exclusion that would negate Wesco's obligations to defend and indemnify M&T for the claims in the Underlying Actions.

50. Harleysville has requested that Wesco assume the defense and indemnification of M&T for the claims in the Underlying Actions.

51. Wesco has refused to defend or indemnify M&T in the Underlying Actions and has denied coverage under the Wesco Policy.

52. An actual controversy exists between Harleysville and Wesco concerning their respective obligations to defend and indemnify M&T in the Underlying Actions.

53. Harleysville, therefore, respectfully requests that this Court adjudge the respective rights and obligations of the parties and declare that Wesco has an obligation to defend and indemnify M&T in the Underling Actions and Harleysville has no obligation to do so.

## COUNT III
### (Reimbursement)

54. Harleysville repeats and realleges the allegations the foregoing allegations as if fully set forth herein.

55. Harleysville has paid all of M&T's defense costs in the Underlying Actions.

56. These expenditures are caused by Wesco's failure to fulfill its obligations under the Wesco Policy.

57. Wesco is obligated to pay for all of the defense costs incurred by Harleysville in the defense of M&T for the Underlying Actions.

58. Additionally, Wesco is obligated to pay for all costs incurred by Harleysville in bringing this action to protect its rights and the rights of its insured.

59. Harleysville is entitled to reimbursement from Wesco, through its rights to legal and equitable contribution and/or subrogation, for all of the defense costs incurred in the defense of M&T in the Underlying Action and requests a judgment to that effect.

## PRAYER FOR RELIEF

**WHEREFORE**, Harleysville demands judgment and respectfully requests that this Court adjudge and declare the following:

   i. Harleysville may terminate the defense that it has thus far provided to M&T in the Underlying Actions;

   ii. Harleysville has no duty to indemnify M&T for any settlement, judgment, or payment rendered against or required by M&T in the Underlying Actions.

   iii. Wesco is obligated to defend and indemnify M&T on a primary basis for the claims asserted in the Underlying Actions;

   iv. Harleysville is entitled to reimbursement from Wesco for all defense costs expended on M&T's behalf;

  v.  Harleysville is entitled to reasonable counsel fees and costs of suit incurred in bringing this action; and

  vi.  Harleysville is entitled to any further relief which the Court deems to be just and equitable.

Dated: New York, New York
   September 19, 2016

           RIKER, DANZIG, SCHERER, HYLAND
            & PERRETTI  LLP
           Attorneys for Plaintiff,
           Harleysville Worcester Insurance Company.
           Headquarters Plaza
           One Speedwell Avenue
           Morristown, NJ 07962-1981
           (973) 538-0800

           500 Fifth Avenue
           Suite 4920
           New York, New York 10110
           (212) 302-6574

           By:  s/Lance J. Kalik
               Lance J. Kalik