UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARLEYSVILLE WORCESTER INSURANCE COMPANY, individually and as assignee of the rights of BERNARD THOMAS & PENNY THOMAS d/b/a M&T TRANSPORT<br><br>*Plaintiff*,<br><br>- *against* -<br><br>WESCO INSURANCE COMPANY, BERNARD THOMAS & PENNY THOMAS d/b/a M&T TRANSPORT, GREAT LAKES CHEESE OF NEW YORK, and AGRI-MARK, INC.<br><br>*Defendant*. | CIVIL ACTION NO.: 1:16-cv-07304-AJN<br><br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff, Harleysville Worcester Insurance Company ("Harleysville"), by and through its attorneys, Riker, Danzig, Scherer, Hyland & Perretti, LLP, and by way of a First Amended Complaint against Defendant Wesco Insurance Company ("Wesco") hereby alleges as follows:

**NATURE OF ACTION**

1. Harleysville seeks a declaration, pursuant to 28 U.S.C.A. § 2201(a), that Wesco had a duty to defend and indemnify Bernard Thomas and Penny Thomas, d/b/a M&T Transport ("M&T") under the terms of an automobile insurance policy issued by Wesco to M&T, for the claims asserted in two related underlying actions: i) *Great Lakes Cheese of New York, Inc. v. Agri-Mark, Inc.*, Civil Case No. 7:14-CV-232 (N.D.N.Y.) ("the Federal Court Action") in which M&T is a third-party defendant with respect to third-party claims asserted by Agri-Mark, Inc. ("Agri-Mark"); and ii) *Great Lakes Cheese of New York, Inc. v. Bernard Thomas and Penny Thomas d/b/a M&T Transport*, Index No. 2015-2594, Supreme Court of New York, Jefferson

1

County ("the State Court Action"). The Federal Court Action and the State Court Action are referred to together herein as the "Underlying Actions".

2. Harleysville also seeks a declaration that the Harleysville policy issued by Harleysville to M&T does not provide coverage for the Underlying Actions.

3. Harleysville seeks reimbursement from Wesco of all amounts that Harleysville paid to defend M&T in the Underlying Actions, and all amounts that Harleysville and M&T paid in settlement of the Underlying Actions.

## THE PARTIES

4. Plaintiff Harleysville is a Pennsylvania corporation with a principal place of business located at 355 Maple Ave. in Harleysville, Pennsylvania.

5. Upon information and belief, Defendant Wesco is a Delaware corporation with its principal place of business located at 59 Maiden Lane, New York, New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Wesco resides in the Southern District of New York.

## THE INSURANCE POLICIES IN DISPUTE

8. Harleysville issued a commercial general liability policy to M&T, bearing policy no. MPA00000091881L, for the policy period from November 1, 2012 through November 1, 2013 (the "Harleysville Policy").

9.      Upon information and belief, Wesco issued a commercial business auto policy to M&T, bearing policy no. WPP1050201-01, for the policy period from January 20, 2013 through January 20, 2014 (the "Wesco Policy").

## **THE UNDERLYING FEDERAL COURT ACTION**

10.     Great Lakes Cheese of New York, Inc. ("Great Lakes Cheese") filed the Federal Court Action on March 3, 2014.

11.     In the Federal Court Action, Great Lakes Cheese alleged that Agri-Mark entered into a purchase agreement pursuant to which Agri-Mark agreed to sell, and Great Lakes Cheese agreed to purchase, raw milk. (Complaint in the Federal Court Action, Exhibit A hereto, at ¶ 6).

12.     Great Lakes Cheese further alleged that, pursuant to that purchase agreement, on August 14, 2013, M&T, as an agent for Agri-Mark, delivered approximately 40,498 pounds of Agri-Mark milk to Great Lakes Cheese (Ex. A. at ¶ 7), and that the milk was then unloaded and pumped into Great Lakes Cheese's facilities. (Ex. A at ¶ 8).

13.     Great Lakes Cheese further alleged that the Agri-Mark milk delivered to Great Lakes Cheese was contaminated with "metal filings, buffing-wheel material, steel, and stainless-steel cutting-wheel material (collectively, 'Metal Contaminant')" (Ex. A at ¶ 8), and that, as a result, approximately 362,519 pounds of cheese were exposed to contaminated milk ("the Contamination"). (Ex. A at ¶ 23).

14.     In the Federal Court Action, Great Lakes Cheese asserted claims against Agri-Mark for breach of contract (Count I), breach of express warranties (Count II), breach of implied warranty of merchantability (Count III), and breach of warranty of fitness for a particular purpose (Count IV). Great Lakes Cheese sought damages from Agri-Mark for "the purchase

price paid to Agri-Mark for the contaminated milk; losses from the contamination of cheese and other milk at the [Great Lakes Cheese] Plant; lost profits; time and expense incurred in ceasing production, and inspecting and cleaning Great Lakes Cheese's facilities and equipment; and attorney's fees. (Ex. A at ¶¶ 27, 46.)

15. On April 3, 2014, Agri-Mark filed a Third-Party Complaint in the Federal Court Action against Bernard Thomas and Penny Thomas d/b/a M&T Transport ("M&T"), among others. (Third-Party Complaint, Exhibit B hereto.)

16. The Third-Party Complaint alleged that the Agri-Mark milk was free of contamination before it was loaded into M&T's vehicle, and that, if the Agri-Mark milk was contaminated as Great Lakes Cheese claims, then it was contaminated "as a result of the placement of the milk within the [M&T] trailer." (Ex. B at ¶ 15.)

17. In the Third-Party Complaint, Agri-Mark asserted claims against M&T for negligence, contribution and/or common-law indemnification (First Cause of Action) and for breach of contract (Fourth Cause of Action).

18. Agri-Mark asserted that, if the allegations against it by Great Lakes Cheese proved true, then M&T was liable to Agri-Mark for the amount of any judgment rendered against Agri-Mark in the Federal Court Action.

19. Harleysville is defended M&T in the Federal Court Action subject to a partial disclaimer and reservation of rights.

## THE STATE COURT ACTION

20. Great Lakes Cheese filed the State Court Action against M&T on December 17, 2015, asserting claims related to the Contamination at issue in the Federal Court Action.

4

21. In the State Court Action, Great Lakes Cheese alleged that on or about June 6, 2013, a two-tank milk trailer owned by M&T ("the Trailer") was involved in an accident. (State Court Complaint, Ex. C, at ¶ 9.)

22. Great Lakes Cheese further alleged that as a result of the accident, repairs were made to the exterior and interior of the Trailer. (Ex. C at ¶ 13.)

23. The State Court Complaint alleged that the interior repairs involved the use of an abrasive cutting wheel, welding tools and grinder so that the stainless-steel surfaces were smoothed to a sanitary grade finish. (Ex. C at ¶14.)

24. The State Court Complaint further alleged that debris from the repairs remained in the trailer after the repairs were completed ("Metal Contaminants"). ( Ex. C at ¶ 15.)

25. The State Court Complaint alleged that in August 2013, M&T picked up milk from Agri-Mark and delivered it to Great Lakes Cheese's plant in Adams, New York, using the Trailer. (Ex. C at ¶ 30.)

26. The State Court Complaint alleged that after the milk was delivered to the Adams plant, Great Lakes Cheese discovered that Great Lakes Cheese's equipment and cheese product had been exposed to the Metal Contaminants and were thereby contaminated. (Ex. C at ¶ 37.)

27. In the State Court Action, Great Lakes Cheese asserted that M&T was negligent in transporting the milk from Agri-Mark to Great Lakes Cheese and breached the standard of care by:

    a) failing to conduct or have the New York Department of Agriculture & Markets conduct a thorough inspection of the Trailer following the June 2013 accident and repairs;

b) failing to thoroughly clean the Trailer and ensure the removal of the Metal Contaminants after the June 2013 accident and repairs;

c) using the Trailer with knowledge that neither a proper inspection nor cleaning had been carried out after the June 2013 accident and repairs;

d) misleading Great Lakes Cheese into accepting delivery from a vehicle that M&T knew had not been properly cleaned and sanitized in accordance with state requirements; and

e) picking up, hauling and unloading milk with reckless disregard of the condition of the Trailer.  (Ex. C at ¶ 55.)

28. In the State Court Action, Great Lakes Cheese sought damages, including: the purchase price paid for the Agri-Mark milk; losses from the contaminated cheese and other milk at the Adams plaint; lost profits; time and expense in ceasing production and inspecting and cleaning Great Lakes Cheese's facilities and equipment; and attorneys' fees and costs, as well as punitive damages.

29. Harleysville defended M&T in the State Court Action subject to a partial disclaimer and reservation of rights.

## SETTLEMENT OF THE UNDERLYING ACTIONS

30. On December 16, 2016, Harleysville, Wesco, M&T, Great Lakes Cheese, and Agri-Mark participated in a settlement conference before Hon. Glenn T. Suddaby, U.S.D.J. regarding the claims in the Federal Court Action and the State Court Action.

31. At the settlement conference, the parties successfully resolved the claims asserted in the Underlying Actions.

32. The parties did not resolve the insurance coverage dispute between Harleysville and Wesco which remains at issue in this action.

33. Wesco did not participate in the underlying settlement on behalf of M&T.

34. As a result, to protect its insured, Harleysville agreed to fund the settlement on behalf of M&T and Harleysville and Wesco reserved all of their respective claims and defenses against one another.

35. In settlement of the Underlying Actions: Harleysville contributed its full policy limit of $1 million, M&T contributed $12,500 and Liberty Insurance Corporation ("Liberty"), Agri-Mark's insurer, contributed $50,000 (the "Settlement").

36. The Settlement was put on the record before Judge Suddaby, and was later memorialized in a written agreement between Great Lakes Cheese, M&T, Harleysville, Agri-Mark, and Liberty wherein the parties fully released any claims against each other and expressly reserved any and all claims against Wesco related to the Underlying Actions.

37. As part of the Settlement, M&T executed a written assignment of its rights against Wesco to Harleysville.

## COUNT I
### (Declaratory Judgment as to Wesco)

38. Harleysville repeats the allegations in the foregoing paragraphs as if fully set forth herein.

39. Upon information and belief, the Wesco Policy contains the following coverage provisions:

    A. Coverage

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance and use of a covered auto.

40. M&T and/or Harleysville provided timely notice of the Contamination and the Underlying Actions to Wesco.

41. The claims asserted against M&T in the Underlying Actions allege "property damage" caused by an "accident" which "result[ed] from the ownership, maintenance and use of a covered auto" within the meaning of the Wesco Policy.

42. As such, Wesco was contractually obligated to defend and indemnify M&T for the claims asserted in the Underlying Actions.

43. Upon information and belief, the Wesco Policy does not contain an applicable exclusion that would negate Wesco's obligations to defend and indemnify M&T for the claims in the Underlying Actions.

44. M&T and Harleysville requested that Wesco assume the defense and indemnification of M&T for the claims in the Underlying Actions, and Wesco had ample opportunity to participate in the Underlying Actions and the Settlement.

45. Wesco improperly denied coverage to M&T under the Wesco Policy, refused to defend or indemnify M&T in the Underlying Actions, and declined to fund the Settlement.

46. Harleysville did not owe coverage for the Underlying Actions because the claims therein involved property damage arising out of the ownership, maintenance, use or entrustment to others of an "auto" which is expressly excluded by exclusion (g) of the Harleysville Policy.

47. An actual controversy exists between Harleysville and Wesco concerning their respective obligations to defend and indemnify M&T in the Underlying Actions.

48. Harleysville, therefore, respectfully requests that this Court adjudge the respective rights and obligations of the parties and declare that Wesco had an obligation to defend and indemnify M&T in the Underlying Actions on a primary basis without contribution from the Harleysville Policy.

## COUNT III
**(Reimbursement)**

49. Harleysville repeats the allegations in the foregoing paragraphs as if fully set forth herein.

50. As a result of Wesco's breach of its obligations under the Wesco Policy, Harleysville defended M&T in the Underlying Actions.

51. As a result of Wesco's breach of its obligations under the Wesco Policy, Harleysville paid $1 million toward the Settlement to resolve the claims against M&T.

52. M&T, whose rights against Wesco have been assigned to Harleysville, paid $12,500 toward the Settlement.

53. Pursuant to the terms of the Wesco Policy, Wesco is obligated to pay for M&T's defense in the Underlying Actions, and for the payments made toward the Settlement.

54. Harleysville is entitled to reimbursement from Wesco, through its rights to legal and equitable contribution and/or subrogation, and as assignee of M&T's rights against Wesco, for all of the costs incurred in the defense of M&T in the Underlying Actions and requests a judgment to that effect.

55. Harleysville is entitled to reimbursement from Wesco, through its rights to legal and equitable contribution and/or subrogation, and as assignee of M&T's rights against Wesco,

for the amounts paid by Harleysville and M&T toward the Settlement in the Underlying Actions and requests a judgment to that effect

## PRAYER FOR RELIEF

**WHEREFORE**, Harleysville demands judgment and respectfully requests that this Court adjudge and declare the following:

i. The Wesco Policy provides primary coverage for the claims against M&T in the Underlying Actions;

ii. Harleysville is entitled to reimbursement from Wesco for all attorneys' fees and defense costs expended on M&T's behalf by Harleysville or M&T;

iii. Harleysville is entitled to reimbursement from Wesco for the payments made by Harleysville and M&T toward the Settlement of the Underlying Actions.

iv. Harleysville is entitled to reasonable counsel fees and costs of suit incurred in bringing this action; and

v. Harleysville is entitled to any further relief which the Court deems to be just and equitable.

Dated: New York, New York
January 27, 2017

         RIKER, DANZIG, SCHERER, HYLAND
          & PERRETTI LLP
         Attorneys for Plaintiff,
         Harleysville Worcester Insurance Company.
         Headquarters Plaza
         One Speedwell Avenue
         Morristown, NJ 07962-1981
         (973) 538-0800

         500 Fifth Avenue
         Suite 4920
         New York, New York 10110
         (212) 302-6574

         By:  s/Lance J. Kalik
             Lance J. Kalik